IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


LONNIE JOSH SMITH,
      Petitioner,

vs.                                Case No. 3:07cv431/LAC/EMT

WALTER A. McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Now pending is Respondent's motion to dismiss (Doc. 15) the instant petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d).  Petitioner responded in opposition to the motion (Doc. 18).

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

The procedural background of this case is established by the state court record (Doc. 15, Exhibits).  Following a jury trial in the Circuit Court for Okaloosa County Florida, Petitioner was found guilty of one count of first degree murder with a weapon (*id*., Ex. D at 108).  Petitioner was sentenced on December 5, 2002, to life imprisonment without the possibility of parole (*id*. at 127–33).  Petitioner filed a notice of appeal with the Florida First District Court of Appeal (First DCA).  On May 16, 2003, the appellate court dismissed the appeal as untimely (Doc. 15, Ex. B). On June 1, 2003, Petitioner filed a petition for writ of habeas corpus seeking a belated appeal, and the First DCA granted the belated appeal (Doc. 15, Ex. C).  Smith v. State, 860 So. 2d 1099 (Fla. 1st DCA 2003).  The First DCA affirmed the conviction and sentence per curiam without written opinion on April 14, 2005, with the mandate issuing May 2, 2005 (Doc. 15, Exs. E, F).  Smith v. State, 900 So. 2d 562 (Fla. 1st DCA Apr. 14, 2005) (Table).

On May 3, 2006, Petitioner filed, through counsel, a motion for postconviction relief in the trial court pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 15, Ex. G at 1–9). On July 11, 2006, the trial court issued an order summarily denying Petitioner's Rule 3.850 motion (*id.*, at 38–41). Petitioner appealed the decision to the First DCA, but the appellate court affirmed per curiam without written opinion on May 8, 2007, with the mandate issuing May 24, 2007 (Doc. 15, Exs. H, I). Smith v. State, 956 So. 2d 460 (Fla. 1st DCA May 8, 2007) (Table).

On October 4, 2007, Petitioner filed the instant federal habeas petition (Doc. 1 at 11).

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In the instant case, the parties do not dispute that § 2244 (d)(1)(A) is the appropriate statutory trigger for the federal limitations period. Additionally, Petitioner does not dispute the accuracy of Respondent's calculation that four hundred twenty-seven (427) days elapsed between the finality of Petitioner's judgment of conviction, on July 13, 2005, and the filing of his federal habeas petition, considering that the limitations period was tolled during the pendency of Petitioner's Rule 3.850 motion, pursuant to § 2244(d)(2) (*see* Doc. 15 at 4; Doc. 18 at 1).[1] However, Petitioner contends

---

[1]According to the court's calculation, Respondent is off by only a day or two, which does not affect the conclusion that the federal petition was untimely. Petitioner's conviction became final for purposes of the AEDPA on July 13, 2005, ninety (90) days after the appellate court issued its decision affirming his conviction. *See* Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273, 1274–75 (11th Cir. 2006) (judgment of conviction becomes "final" on the date in which the United States Supreme Court either issues a decision on the merits of the petitioner's direct appeal or denies certiorari, or after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari, which begins to run on the date of the appellate court's affirmance of the conviction, not the date of the appellate court's mandate) (citing Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002)). Two hundred

he is entitled to equitable tolling of the limitations period because of his counsel's unreasonable delay in filing Petitioner's Rule 3.850 motion and counsel's affirmative misrepresentation as to the date the federal limitations period began to run (*see* Doc. 18 at 1–5).

"Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*).  "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (citing Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, --- U.S. ---, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007)).  The burden of establishing entitlement to this extraordinary remedy rests with Petitioner, *see* Wade, *supra*; Drew, *supra*, thus Petitioner's burden is to show extraordinary circumstances that were both beyond his control and unavoidable even with his own exercise of diligence.

On many occasions, the Eleventh Circuit has explained that "[m]ere attorney negligence [will] not justify equitable tolling," Steed, 219 F.3d at 1300, a point which the Supreme Court recently affirmed in Lawrence v. Florida, 127 S. Ct. 1079.  Thus, when an attorney miscalculates a deadline, fails to adequately raise a potentially meritorious claim, or otherwise makes a run-of-the-mill mistake, such circumstances are insufficient to warrant equitable tolling.  However, the Eleventh Circuit recently held that serious attorney misconduct may constitute an extraordinary circumstance for purposes of equitable tolling.  *See* Downs v. McNeil, --- F.3d ---, No. 05-10210,

---

ninety-three (293) days elapsed from July 14, 2005 to May 3, 2006, when Petitioner filed, through counsel, his Rule 3.850 motion.  The Rule 3.850 motion was pending until May 24, 2007, upon issuance of the First DCA's mandate affirming the trial court's decision. *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court).  The federal limitations period expired seventy-two (72) days later on August 5, 2007, but that day was a Sunday, so the petition would have been timely if filed on August 6, 2007.  Petitioner did not file his federal petition until October 4, 2007.

2008 WL 756348, at *11–13 (Mar. 24, 2008).[2]  In determining whether counsel's conduct was extraordinary, the court must view counsel's conduct as a whole.  *Id.*, at *12.  In Downs, the court deemed the following facts, if proven, sufficiently serious to constitute extraordinary circumstances: Downs's unequivocal, repeated demands that his attorneys file his habeas petition, Downs's close tracking of counsels' work and the applicable federal deadlines, and counsels' overt deception in representing they had filed a tolling petition in state court when they had not in fact done so, thereby depriving Downs of several months of his statutorily-guaranteed one-year federal limitations period.  *Id.* at *11.  With regard to the "due diligence" prong of the equitable tolling standard, the court deemed that the following facts, if true, constituted appropriate diligence:  (1) Downs wrote to three attorneys in the firm to express concern over the running of the federal limitations period and to urge the filing of his federal petition or an additional state court pleading; and (2) Downs attempted to assist his attorneys in drafting his federal petition by providing them with either a draft petition or a list of issues to be included in the petition.  *Id.* at *12.  As to the third prong of the equitable tolling standard, that is, whether the circumstances were beyond the petitioner's control, the Downs court concluded that the following facts, if true, showed that the circumstances were not ones that the petitioner was reasonably able to control:  (1) the egregious misconduct of counsel was not of a kind

_____

[2]In adopting the fact-specific, case-by-case approach taken by other circuits in inquiring as to whether a petitioner has shown egregious attorney misconduct which entitled him to equitable tolling, the Eleventh Circuit discussed favorably the following cases, Fleming v. Evans, 481 F.3d 1249 (10th Cir. 2007), United States v. Martin, 408 F.3d 1089, 1093 (8th Cir. 2005), Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003), Spitsyn v. Moore, 345 F.3d 796, 801–02 (9th Cir. 2003), and United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002).  Downs, 2008 WL 756348, at *10.  In Baldayaque, for example, the petitioner's attorney ignored a directive to file a petition under 28 U.S.C. § 2255, failed to conduct any legal research, wrongly advised the petitioner's wife that the filing period had expired, and failed to meet or speak with the petitioner at any point during the representation.  388 F.3d at 152.  The Second Circuit held these actions, taken together, constituted extraordinary circumstances that might warrant equitable tolling.  *Id.*

Similarly, in Fleming, the Tenth Circuit held equitable tolling might be appropriate where an attorney made repeated misrepresentations to his client over the course of a year concerning the status of the client's petition for state post-conviction relief.  481 F.3d at 1256–57.  Nearly a year before the expiration of the AEDPA limitations period, Fleming's mother had retained an attorney to represent Fleming in state post-conviction proceedings.  *Id.* at 1256.  On several occasions, Fleming inquired into the status of his state petition (the filing of which would toll the federal limitations period, *see* 28 U.S.C. § 2244(d)(2)), and repeatedly received false assurances that the petition was being prepared and would be filed shortly.  *Id.*  When no petition was filed, Fleming drafted his own petition and submitted it to the attorney for review and filing.  The attorney, however, failed to file the petition until the AEDPA limitations period had expired.  *Id.*  The Tenth Circuit held these allegations, at a minimum, warranted an evidentiary hearing to determine whether Fleming was entitled to equitable tolling in light of the attorney's misconduct.  *Id.* at 1256–57.

In Martin, the Eighth Circuit granted equitable tolling to a petitioner whose attorney disregarded instructions to file a motion under § 2255, repeatedly lied to the petitioner and his wife about the filing deadline and the status of the case, refused to communicate with the petitioner and his family, and failed to return the petitioner's documents.  408 F.3d at 1090–91, 1096.  The Fifth and Ninth Circuits have condoned the use of equitable tolling under similar circumstances, extending the federal limitations period when, among other things, counsel lied about filing a habeas petition, Wynn, 292 F.3d at 230, and failed to file a federal habeas petition after being instructed to do so, Spitsyn, 345 F.3d at 801–02.

that Downs could immediately ascertain—evidence of his lawyers' untrustworthiness surfaced slowly and counsel's communications throughout the course of representation were unclear as to whether and when counsel had drafted and filed Downs's state and federal petitions; (2) Downs took prudent, persistent action to remind his lawyers of imminent deadlines and did his best to remain informed of the status of his state court proceedings as they related to his federal limitations period; (3) despite Downs's efforts, he was misled by counsel's deception about having filed Downs's state habeas petition, thereby depriving Downs of as many as three months of his federal limitations period during a time in which he had no reason to suspect his case was not proceeding in a timely fashion; (4) once his counsel's deceit came to light, Downs had less than six weeks left before his federal limitations period expired and by the time his state habeas petition was finally filed, he had only one day remaining of his federal limitations period, and during this period his lawyers maintained possession of his legal files; and (5) Downs reasonably could have inferred from counsel's return of his pro se federal petition that counsel either had filed the petition as directed or were prepared to do so the day the state court decision on his state habeas petition became final. *Id.* at *13.

The circumstances alleged by Petitioner in the instant case, taken as true, fall far short of evidencing egregious misconduct of counsel, reasonable efforts by Petitioner to ensure that his federal petition would be timely filed, and circumstances beyond Petitioner's control.  In his unsworn reply to Respondent's motion to dismiss (*see* Doc. 18 at 6), Petitioner alleges that on July 18, 2005, his family retained Attorney Augustus Harper to pursue Petitioner's state post-conviction remedies (*id.* at 2).  Attorney Harper "unreasonably delayed" until May 3, 2006, to file Petitioner's Rule 3.850 motion (*id.*).  When the First DCA denied Petitioner's appeal of his Rule 3.850 motion, counsel sent Petitioner a letter the next day, on May 9, 2007, stating that the federal habeas "clock" would not begin to run until the mandate issued in Petitioner's state post-conviction proceeding (*see* Doc. 18 at 2, Ex. A).  After receiving counsel's letter, Petitioner went to the institutional law library, and an inmate law clerk affirmed counsel's advice concerning the commencement of the federal limitations period (*id.* at 5).  Additionally, Petitioner read the federal statute and believed that counsel's advice was correct (*id.*).  Petitioner sent a letter to counsel on May 30, 2007, inquiring as to counsel's fee to represent Petitioner in a federal habeas proceeding and expressing concern about missing the one-year federal deadline (*id.* at 3).  On June 3, 2007, Petitioner and counsel conferred via telephone, during which counsel informed Petitioner that he had viable federal claims, Petitioner again expressed concern about the federal deadline, and counsel advised Petitioner to tell his family to contact him (counsel) (*id.*).  Also in early June, Petitioner told an inmate law clerk that he wished to start preparing a § 2254 petition in the event that his family was unable to retain Attorney Harper

or other counsel, but the law clerk told him that he could not help Petitioner until Petitioner had his "paperwork" (*id*.).  On July 23, 2007, Petitioner wrote to counsel inquiring about the federal habeas procedure and his federal deadline and expressing his need for "information and paperwork" (*id*. at 3).  On September 5, 2007, Petitioner spoke with Attorney Harper about the federal deadline and the possibility of Harper representing him in a federal habeas action (*id*.).  On September 11, 2007, Petitioner received a letter from counsel advising him that his family needed to contact him regarding financial arrangements (*id*.).  Also at approximately that time, Petitioner took the paperwork he had received from his family (Petitioner states he never received paperwork from counsel) to an inmate law clerk and asked him to begin preparing his § 2254 petition (*id*. at 5).  The law clerk reviewed the paperwork and informed Petitioner that the limitations period had expired, therefore, it did not matter when Petitioner filed his petition (*id*.).  Petitioner filed his petition twenty-five (25) days later (*id*.).

Initially, taking Petitioner's allegations as true and viewing counsel's behavior as a whole, Petitioner's allegations concerning Attorney Harper's conduct do not rise to the level of egregious misconduct.  In <u>Downs</u> and the other circuit court cases where courts have concluded that an attorney's conduct constituted egregious misconduct, there has been evidence of counsel's thwarting a petitioner's effort to timely file his petition or working against the petitioner's interests, for example, an attorney's disregarding instructions to file a state or federal petition; repeatedly deceiving the petitioner and family members about filing deadlines, whether or not petitions had actually been filed, and the status of the case; refusing to communicate with the petitioner or his family; and failing to return the petitioner's documents.  *See* <u>Downs</u>, 2008 WL 756348, at *11; <u>Baldayaque</u>, 338 F.3d at 152; <u>Martin</u>, 408 F.3d at 1096; <u>Wynn</u>, 292 F.3d at 230; <u>Spitsyn</u>, 345 F.3d at 801–02; <u>Fleming</u>, 481 F.3d at 1256–57.  In the instant case, although Petitioner's counsel misinformed him on May 9, 2007 that the federal "clock" would not begin to run until the appeal of Petitioner's state post-conviction motion was final, there are no facts suggesting that counsel knowingly or intentionally deceived Petitioner, as opposed to negligently misadvising him.  Furthermore, there is no evidence that Attorney Harper disregarded any instructions from Petitioner with regard to filing state or federal post-conviction applications or deceived Petitioner or family members about the status of preparation or filing of documents.  Likewise there is no evidence that counsel refused to communicate with Petitioner or his family; in fact, according to Petitioner's description of their contact, there was fairly regular communication between Petitioner and counsel.  Although Petitioner states that on July 23, 2007, less than two weeks before the limitations period expired, he wrote to counsel inquiring about the federal habeas procedure and the federal deadline, and expressing his "need for information and paperwork," but counsel did not send him his

"paperwork" (*see* Doc. 18 at 3), Petitioner states that as late as September 11, 2007, he and counsel were still discussing the possibility of counsel's representing him in a federal habeas proceeding (*id.*).   Therefore, counsel's failure to return Petitioner's paperwork until a decision regarding representation had been made was not the kind of dismissive attorney conduct that existed in cases finding egregious attorney misconduct.

Additionally, Petitioner has failed to show he made reasonable efforts to ensure that his federal petition would be timely filed.  The first effort Petitioner made to begin the federal filing process was his letter to Attorney Harper on May 30, 2007, in which he asked Harper his fee for representation in a federal proceeding and expressed concern about meeting the deadline (Doc. 18 at 3), but this first step was taken after two hundred ninety-eight (298) days of the federal limitations period had already expired (293 days between the finality of Petitioner's conviction and the filing of his Rule 3.850 motion and five (5) days after the Rule 3.850 motion was no longer pending). Furthermore, although Petitioner expressed his concern to counsel about meeting the federal deadline, at no time did Petitioner actually request that Attorney Harper file a § 2254 for him or retain him to do so.  Additionally, although an inmate law clerk informed Petitioner in early June of 2007 that Petitioner needed his "paperwork" before a § 2254 petition could be drafted, Petitioner delayed until July 23, 2007, less than two weeks before expiration of the federal deadline, to send a letter to counsel requesting the paperwork.  Furthermore, Petitioner states he finally filed the instant petition using paperwork he received from his family, but he does not allege the existence of any obstacle to obtaining the paperwork from his family before the limitations period expired. These facts fail to show that Petitioner exercised reasonable diligence to ensure that his federal petition would be timely filed.

Finally, the circumstances that led to Petitioner's late filing were not such that he was reasonably unable to control.  Counsel's error in advising Petitioner that the federal limitations period had not yet commenced was not an error that Petitioner could not have immediately discovered.  The fact that Petitioner conducted independent research and believed counsel had advised him correctly does not render the discovery of counsel's error out of Petitioner's control. *See* Wakefield v. Railroad Retirement Board, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is not a factor that can warrant equitable tolling"); *see also* Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law, nor inadequacy of services of inmate law clerk who helped draft habeas petition, nor fact that prison law library was closed for 15 days entitled petitioner to equitable tolling of limitations period); Holloway v. Jones, 166 F. Supp. 2d 1185 (E.D. Mich. 2001) ("Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations.") (citing Henderson v.

Johnson, 1 F. Supp. 2d 650, 656 (N.D. Tex. 1998) and Bilodeau v. Angelone, 39 F. Supp. 2d 652, 659 & n.1 (E.D. Va. 1999) (petitioner's claim that the delay in filing the petition resulted from his seeking legal assistance would neither establish excusable neglect, so as to warrant an enlargement of time to file the petition, or support the equitable tolling of the statute of limitations)). Furthermore, the facts do not show that Petitioner took prudent, persistent action to closely track the applicable federal deadline and prepare his pro se petition in the event that he could not afford to retain counsel to file it for him.  Therefore, the undersigned concludes that Petitioner is not entitled to equitable tolling of the limitations period.

Based upon the foregoing analysis, Petitioner's federal petition was filed beyond the 365-day federal time limit, even accounting for statutory tolling during the pendency of Petitioner's Rule 3.850 motion.  Therefore, Respondent's motion to dismiss should be granted, and the habeas petition should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (Doc. 15) be **GRANTED**.

2.      That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 28th day of April 2008.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**